# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-CR-0070-05 & 06-CVE |
| | ) |
| CINDY NGUYEN, and | ) |
| VICTORIA TRUONG, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court are defendants Cindy Nguyen and Victoria Truong's (defendants) motion to dismiss count two of the indictment (Dkt. ## 272, 277) and motion for severance (Dkt. # 275).

On June 7, 2016, a grand jury returned an indictment charging nine defendants[1] with money laundering conspiracy (count one), in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1), and drug conspiracy (count two), in violation of 21 U.S.C. §§ 846, 841(b)(1)(B)(vii). Dkt. # 2. With respect to these two defendants, the government alleges that they participated in the conspiracies to launder money and distribute drugs in that they permitted defendant Do, the alleged leader of the conspiracies, to "deposit proceeds derived from the distribution of marijuana" into their checking accounts and subsequently made withdrawals of these monies. Id. at 9, 10, 19, 20. Specifically, the government alleges that defendant Truong's bank account, between April 4 and June 10, 2013, received eight deposits derived from the distribution of marijuana, totaling approximately $64,000, and showed seven withdrawals, totaling $55,900;

---

[1] Two defendants, Irene Nguyen and Apinya Ayuwaddhana, have since been dismissed from the case. Dkt. ## 205, 206.

and defendant Cindy Nguyen's bank account, between February 12 and October 31, 2013, received nineteen deposits derived from the distribution of marijuana, totaling $161,000, and showed fourteen withdrawals, totaling $106,095. Id.; Dkt. # 295, at 2. In addition, the government alleges,

> Defendant Victoria Truong has admitted that she opened the account at the direction of Defendant Phong Do. She also explained that she would give Phong Do the deposited money and there were instances when Truong and Phong Do would go to the bank together to withdraw the deposited money.
>
> Prior to Cindy Nguyen joining the Money Laundering Conspiracy from December 2011 through February 2013, one of her Bank of America accounts used to launder money only had a balance of $6.25.
>
> In March 2013, Cindy Nguyen started receiving money laundering deposits. Aside from the laundered money, the only deposits she made to the account were some small (less then $100) ATM deposits. Cindy Nguyen's accounts also reflect deposits for approximately $500 from what appears to be her employer at the time . . . . Since the money laundering deposits stopped, Cindy Nguyen's account has maintained about $1,000 of activity in and out each month.
>
> Throughout their participation in the conspiracies, Victoria Truong and Cindy Nguyen were room-mates [sic].

Id. at 2-3.

On November 27, 2017, defendants filed a motion to dismiss count two of the indictment (Dkt. ## 272, 277) and a motion for severance (Dkt. # 275).

**I.    Defendants' Motion to Dismiss Count Two of the Indictment**

Defendants argue that count two of the indictment should be dismissed as to them because "[t[here is no evidence which connects [them] to the possession or distribution of marijuana." Dkt. ## 272, 277, at 6. The government responds that the money laundering and marijuana conspiracies are interrelated, and that it will present evidence that defendants "participat[ed] in both." Dkt. # 295, at 4-5.

2

**i.**

"An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997)). An indictment may not be challenged based on the strength or weakness of the government's case, but only on whether the allegations, if taken as true, support an indictment. Id. A very narrow exception to the rule against assessing the factual underpinnings of an indictment exists when undisputed facts establish that, "as a matter of law, the government is incapable of proving its case beyond a reasonable doubt." Id. (quoting United States v. Hall, 20 F.3d 1084, 1088 (10th Cir. 1994)). "Dismissals under this exception are not made on account of a lack of evidence to support the government's case, but because undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was charged." Todd, 446 F.3d at 1068. See e.g., Hall, 20 F.3d at 1085-86 (indictment dismissed where defendant was charged with knowingly using a pistol during a drug trafficking offense but offered undisputed evidence that he was not present when drugs were found in his home); United States v. Brown, 925 F.2d 1301, 1305 (10th Cir. 1991) (indictment dismissed where government admitted that it could not provide evidence demonstrating that stolen intellectual property involved stolen physical goods and statute at issue required such a showing).

"To prove a conspiracy, the government must show that '(1) two or more persons agreed to violate the law; (2) the defendant knew the essential objectives of the conspiracy; (3) the defendant knowingly and voluntarily participated in the conspiracy; and (4) the alleged coconspirators were interdependent.'" United States v. Acosta-Gallardo, 656 F.3d 1109, 1123 (10th Cir. 2011) (quoting

3

United States v. Yehling, 456 F.3d 1236, 1240 (10th Cir. 2006)). "An agreement constituting a conspiracy may be inferred from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994) (internal citation omitted).

### ii.

Defendants argue that count two must be dismissed as to them because "there is no evidence of, or witness who can testify as to the knowledge of the Defendants that there were drugs related to the money involved," and "[w]ithout that knowledge, it is legally impossible for the Defendants to have knowingly and voluntarily joined a criminal conspiracy to distribute marijuana." Dkt. ## 272, 277, at 8. In response, the government states that "the manner in which the funnel accounts were used will be direct evidence of the defendants' participation in the scheme," and that it will, "among other things," also "present evidence showing a connection between cellular phone devices subscribed and used by the defendants charged in both conspiracies." Dkt. # 295, at 4-5.

Defendants fail to point to undisputed facts that establish, as a matter of law, that the government is incapable of proving count two against them beyond a reasonable doubt. Instead, defendants essentially argue that the government's evidence against them, with respect to count two, is weak because the government does not have direct evidence that defendants knew the allegedly laundered money was related to drugs. Even assuming the government does lack such direct evidence (which it argues it does not), the government is permitted to rely on circumstantial evidence to prove that defendants knew the money was connected to drugs, and whether the government's evidence is sufficiently strong to convict defendants as to count two is for the jury to decide (or, in some cases, for the Court to decide as a matter of law "[a]fter the government closes

4

its evidence or after the close of all evidence . . . ." Fed. R. Crim. P. 29 (emphasis added)). It would be contrary to Tenth Circuit authority to dismiss count two of the indictment against defendants based on their argument that the government lacks evidence to sustain a conviction against them as to this count. See Todd, 446 F.3d at 1068.

Accordingly, defendants' motion to dismiss count two of the indictment (Dkt. ## 272, 277) are denied.

## II. Defendants' Motion for Severance

Defendants argue that, in order to avoid "real prejudice to them," their trial should be "severed from the trial of the other codefendants," or, alternatively, severed from "the trial of Count 2 of the indictment." Dkt. # 275, at 4, 9. The government responds that the "defendants charged in the conspiracy should be tried together on the drug related offenses." Dkt. # 297, at 1.

### i.

Pursuant to Federal Rule of Criminal Procedure 14(a), a district court may sever the trials of codefendants joined in a single indictment if a joint trial would prejudice one or more of the defendants named in the indictment. "Joint trials of defendants who are indicted together are preferred," however, "because [t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." United States v. Hall, 473 F.3d 1295, 1301-02 (10th Cir. 2007) (internal quotation omitted). If defendants have been properly joined in the same indictment, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. at 534, 539 (1993). A court's decision to order severance is discretionary, and a defendant

5

bears a "heavy burden of showing real prejudice to his case." United States v. McConnell, 749 F.2d 1441, 1444 (10th Cir. 1984). Tenth Circuit precedent is clear that "'[n]either a mere allegation that [the] defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' [of damaging evidence], is sufficient to warrant severance.'" United States v. Edwards, 69 F.3d 419, 434 (10th Cir. 1995) (quoting United States v. Levine, 983 F.2d 165, 167 (10th Cir. 1992)).

### ii.

Defendants argue that their trial should be severed from the trial of the other codefendants, or, alternatively, from the trial of count two, because defendants' "level of alleged culpability is significantly less than that of other defendants," and "by requiring [defendants] to appear alongside Do in the same trial, the jury will hear all sorts of evidence regarding Do's substantial drug trafficking and money laundering activities." Dkt. # 275, at 5. In response, the government argues that "defendants have not demonstrated that severance is appropriate," and "[n]othing presented demonstrates that [defendants] will be prejudiced in a manner that cannot be addressed by appropriate instructions to the jury." Dkt. # 297, at 6.

Defendants fail to meet their heavy burden of showing that a joint trial would cause them real prejudice. Defendants do not identify any specific trial right that a joint trial would compromise. Instead, they argue that, based on their supposedly lower level of culpability than some of their codefendants, there is a risk that the jury might find them guilty by association. But the Tenth Circuit has repeatedly held that demonstrating the possibility of guilt by association is insufficient to warrant severance because a "negative spill-over effect from damaging evidence presented against codefendants" does not show actual prejudice. United States v. Caldwell, 560 F.3d 1214, 1221 (10th

6

Cir. 2009) (quoting United States v. Wacker, 72 F.3d 1453, 1468 (10th Cir. 1995)); see also Edwards, 69 F.3d at 434.[2]

Accordingly, defendants' motion for severance (Dkt. # 275) is denied.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss count two of the indictment (Dkt. ## 272, 277) are **denied**, and defendants' motion for severance (Dkt. # 275) is **denied**.

**DATED** this 5th day of December, 2017.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[2] Courts have made exceptions to this rule in extraordinary circumstances. See, e.g., United States v. Ayala, 2010 WL 3056659, at *2 (N.D. Okla. July 30, 2010) (severance warranted for two of eight codefendants where the government did not allege that the two codefendants were part of the drug conspiracy with which the government charged the other six defendants). But this case does not present extraordinary circumstances—to the contrary, it presents the "ordinary [scenario] where multiple defendants are charged with conspiracy and [some of] the alleged conspirators argue that a joint trial will be prejudicial" to them. Id.